# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### December 11, 2012 Session

## STATE OF TENNESSEE v. JEREMY BAILEY

**Direct Appeal from the Circuit Court for Hickman County**
**No. 10-5055CR      James G. Martin, III, Judge**

---

**No. M2012-00504-CCA-R3-CD - Filed March 4, 2013**

---

The appellant, Jeremy[1] Bailey, pled nolo contendere in the Hickman County Circuit Court to two counts of statutory rape, a Class E felony. Pursuant to the plea agreement, the appellant agreed to be sentenced as a Range II, multiple offender and received consecutive four-year sentences with the manner of service to be determined by the trial court. After a sentencing hearing, the trial court ordered that the appellant serve the sentences as eleven months, twenty-nine days in jail "day for day" prior to his being released on supervised probation. On appeal, the appellant contends that the trial court erred by refusing to grant his requests for judicial diversion and full probation and by ordering that he serve his sentence of confinement day for day. The State concedes that the trial court erred by imposing day-for-day confinement. Based upon the oral arguments, the record, and the parties' briefs, we affirm the trial court's denial of judicial diversion and full probation but remand for correction of the judgments to reflect that the appellant is entitled to earn good conduct credits while serving eleven months and twenty-nine days of his felony sentences in jail.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed in Part and Reversed in Part, and the Case is Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, and ROGER A. PAGE, JJ., joined.

Rob McKinney, Nashville, Tennessee, for the appellant, Jeremy Bailey.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Kim R. Helper, District Attorney General; and Michael Jay Fahey, II, Assistant

---

[1]Throughout the record, the appellant's first name appears as Jeremy or Jeramy. Although the correct spelling appears to be "Jeramy," we have chosen to spell his name as it appears in the indictment.

District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

In April 2010, the Hickman County Grand Jury indicted the appellant for counts 1 through 4, statutory rape by an authority figure, a Class C felony; counts 5 through 8, aggravated statutory rape, a Class D felony; and counts 9 through 11, sexual battery by an authority figure, a Class C felony. Counts 1 through 8 involved "Child A," and counts 9 through 11 involved "Child B." The indictment alleged that all of the crimes occurred "between May 1, 2009 and September 23, 2009."

The appellant pled nolo contendere to statutory rape in counts 5 and 6 as a lesser-included offense of aggravated statutory rape, and the remaining charges were dismissed. Pursuant to the plea agreement, the appellant agreed to be sentenced as a Range II, multiple offender to consecutive four-year sentences. The manner of service was to be determined by the trial court with no more than one year to be served in confinement.

At the appellant's sentencing hearing, Douglas T. Bates, III, testified that he was an attorney, had lived in Hickman County for fifty-nine years, and became familiar with the Mennonite community of Russell and Cane Creeks in the late 1980's or early 1990's. The victims in this case were Mennonite children. Bates said the Mennonites referred to themselves as "'Plain People'" and were very loving. He said that they were welcoming to outsiders and that they were vulnerable because they "do not wish to participate in man's court." He said that someone from outside the community "coming in and violating their daughters" put their hospitality at great risk and that these crimes had been devastating to the Mennonite community and the victims' family. On cross-examination, Bates testified that even if the victims' family was not part of the Mennonite Church, the family was still part of the Mennonite community.

Randall Ward, the Sheriff of Hickman County since 2002, acknowledged that statutory rape, aggravated statutory rape, and sexual battery by an authority figure were "prominent offenses" in Hickman County. He said that two of his detectives worked with those crimes and that the detectives were "swamped."

Rhonda Bailey, the appellant's mother, testified for the appellant that he graduated from high school, took welding classes at a community college, and attended the Bobby Isaac Motorsports Program, where he learned to work on race cars. The appellant used to travel around the country with race teams. The appellant moved to Tennessee a few years ago and

lived with his grandfather. At the time of the sentencing hearing, the appellant was planning to go back to school to become a farrier. Mrs. Bailey said that the appellant had been "a very good kid," that she had never known him to use alcohol or drugs, and that he turned himself in to police when he learned about the charges in this case. The appellant lived with his grandmother and would follow the conditions of probation.

On cross-examination, Mrs. Bailey testified that the appellant was not living with her at the time of the crimes. Everything she knew about the case, she learned from the appellant.

The appellant addressed the trial court and stated that he decided to plead guilty because he was facing more than fifty years in prison and "it seemed to be the lesser of two evils." The appellant left the Russell Creek community after a weapon and two journals were stolen from him, and an individual named Dean Johnson was one of two people who knew the location of the journals. The appellant said that the journals could have been used to prove his innocence in this case, that Johnson was the primary suspect in the theft of the journals, and that the appellant lived in constant fear because "I never know when Dean Johnson may appear and try something." He said that he had never consumed alcohol or drugs, that he began working when he was fifteen years old, and that he had fully cooperated in this case. At the time of the sentencing hearing, the appellant was self-employed and living with his grandmother. He said that he was planning to attend a twelve-week horseshoing school in North Georgia as soon as this case was resolved and that he planned to return to Tennessee after school to "begin serving my community and filling the need for a competent farrier." He said that his being in confinement would be a hardship on his family because his grandparents were "not in the greatest health," and he requested that the trial court grant him judicial diversion and full probation.

The State introduced the appellant's presentence report into evidence. In the report, the then thirty-one-year-old appellant stated that he graduated from high school in North Carolina, attended the welding program at Asheville-Buncombe Technical Community College, and participated in the Motorsports Program at Catawba Valley Community College. The appellant described his physical and mental health as "excellent" and denied any use of illegal or prescription drugs. In the report, the appellant said he had been self-employed since 2001. Prior to self-employment, he worked as a "climber" for Asplundh Tree Company from 2000 to 2001; as a "fabricator" for KLB Racecars and Parts from 1998 to 1999; and for a gas station from 1995 to 1998. According to the report, the appellant has no prior criminal record.

The State also introduced into evidence forensic video-recorded interviews of Child A and Child B. During Child A's interview, she stated that she was fourteen years old; was

born on January 9, 1995; and lived with her parents, five brothers, and four sisters. The appellant, whom she described as a twenty-nine-year-old "boy," used to live with her family. She said that while she and the appellant were alone at her aunt's house, the appellant "played with [her]" with his fingers. When shown an anatomical drawing of a naked female, Child A identified the vaginal area as the area the appellant touched. One time, when the appellant and Child A were picking tomatoes, they went into her aunt's cellar. The appellant opened his pants, pulled up Child A's dress, and put his "private" inside her panties. He also "peed" on her panties. On another occasion, Child A went to her aunt's barn to gather eggs. The appellant was there and put his private inside her body. During a fourth incident, the appellant and Child A were in a bedroom in her aunt's house. The appellant licked her private, put some "plastic" on his private, and put his private inside her body. Once or twice, the appellant had Child A feel his private with her hand. All of the incidents happened on different days between July and August 2009 while she was fourteen years old.

During Child B's interview, she stated that she was sixteen years old; was born on August 18, 1993; and lived with her parents, five brothers, and four sisters. She said that "some things" happened between her and "a boy," the appellant. The appellant began staying with Child B's family in December 2008 or January 2009. In the summer of 2009, Child B's family began staking tomatoes. One time while they were working, Child B "went out back" with the appellant. They hugged and kissed, and he touched her vaginal area with his "part." Another time, the appellant hid in her aunt's bedroom, and Child B's aunt told her to find him. When Child B found him in the bedroom, they hugged and kissed, and he touched her vaginal area with his part. She said she touched the appellant's part one time with her hand during the summer. After one of the incidents, the appellant told her that he "felt bad that it happened" and that he wished it had not happened. She said that all of the incidents occurred when she was fifteen years old and that she did not think the appellant ever put his part inside of her body.

The appellant submitted into evidence a psychological and psychosexual evaluation that was conducted on September 19, 2011. The evaluator concluded that the appellant did not have any serious mental illnesses but that he had some mild psychological maladjustment due to his being uncomfortable in social settings and "a bit of a loner." The evaluator also concluded that the appellant had some sexual issues that needed to be addressed because "[h]is understanding of sexual matters is quite limited as compared to the average person" and that he needed psychotherapy to address his personality and psychosexual issues. Finally, the evaluator concluded that the appellant was at a moderately low risk of reoffending. The appellant submitted numerous letters to the trial court from friends and family attesting to his good character.

In a written order, the trial court summarized the evidence, including the testimony

presented at the sentencing hearing, the information provided by Child A and Child B during their forensic interviews, and the results of the appellant's psychological and psychosexual evaluation. The trial court denied the appellant's requests for judicial diversion and full probation and ordered that he serve eleven months, twenty-nine days in confinement "day for day" with the remainder of his effective eight-year sentence to be served on probation. On appeal, the appellant challenges the trial court's denial of judicial diversion and full probation and its imposition of day-for-day confinement.

## II. Analysis

### A. Judicial Diversion

Generally, it is within a trial court's discretion to grant or deny judicial diversion. See State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). As such, the trial court's decision will be overturned only if the court abused its discretion. Id. In other words, we will not interfere with the denial of judicial diversion if the record contains any substantial evidence to support the trial court's decision. Id. Moreover, we observe that "judicial diversion is similar in purpose to pretrial diversion and is to be imposed within the discretion of the trial court subject only to the same constraints applicable to prosecutors in applying pretrial diversion [under Tennessee Code Annotated section] 40-15-105." State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

A defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty or nolo contendere to a Class C, D, or E felony; has not previously been convicted of a felony or a Class A misdemeanor; and is not seeking deferral for a sexual offense. See Tenn. Code Ann. § 40-35-313(a)(1)(B)(I). Additionally, in determining whether to grant a defendant judicial diversion, the trial court must consider all of the following factors: (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the status of the defendant's physical and mental health, and (6) the deterrence value to the defendant and others. State v. Lewis, 978 S.W.2d 558, 566 (Tenn. Crim. App. 1997). The record must reflect that the trial court has taken all of the factors into consideration, and "we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision." State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). Furthermore, "[t]he court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others." Id.

In denying the appellant's request for judicial diversion, the trial court first considered the circumstances of the offenses. The court noted that the appellant was twenty-eight years

old at the time of the crimes and that Child A and Child B were fourteen- and fifteen-year-old females. The court characterized the circumstances of the offenses as "egregious" and said that the appellant's agreement with the State was "an extremely mild alternative to the possible outcome of Mr. Bailey's case." As to the appellant's social history, the court noted that the appellant had a good home environment as a child, had no history of drug use, had never been married, and exhibited a good attitude toward law enforcement. The court also noted that the appellant described his physical and mental health as excellent. However, the court noted that the appellant was a loner and that his psychological and psychosexual evaluator concluded he had some mild psychological maladjustment. The trial court stated that the appellant's amenability to correction was unknown because his "attitude is one of denial" and that "[t]o be successful, Mr. Bailey must recognize his own deficiencies." The trial court also considered the need for deterrence, stating,

> The Hickman County Sheriff's Department is understaffed and is unable to fully investigate crimes of the nature presented here. Sexual battery by an authority figure, aggravated statutory rape, and statutory rape are considered prominent offenses in Hickman County. The Court believes that the denial of judicial diversion will aid in deterring others from engaging in such criminal activity.

The court concluded that granting judicial diversion would further depreciate the seriousness of the offenses and "send the wrong message to the public."

The appellant contends that his lack of a criminal record and "exemplary" social history make him an excellent candidate for judicial diversion. However, the trial court was obviously troubled by the circumstances of the offenses, the appellant's social maladjustment, and his refusal to accept any responsibility for his actions. The trial court weighed all of the factors and determined that the appellant was not a suitable candidate for judicial diversion. We conclude that the trial court did not abuse its discretion.

## B. Full Probation

Next, we will address the trial court's denial of full probation. In sentencing a defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in

Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). Previously, appellate review of the length, range, or manner of service of a sentence was de novo with a presumption of correctness. See Tenn. Code Ann. § 40-35-401(d). However, our supreme court recently announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). Even more recently, the court specifically held that the abuse of discretion standard, with a presumption of reasonableness, applies to "questions related to probation or any other alternative sentence." State v. Christine Caudle, ___ S.W.3d ___, No. M2010-01172-SC-R11-CD, 2012 Tenn. LEXIS 824, *16 (Nashville, Nov. 27, 2012). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6).

In the instant case, although the appellant was convicted of a Class E felony, he agreed to be sentenced as a Range II, multiple offender. Therefore, he is not considered to be a favorable candidate for alternative sentencing. Regardless, because the sentences imposed were ten years or less, the appellant was eligible for alternative sentencing.

Tennessee Code Annotated section 40-35-103(1) sets forth the following sentencing considerations which are utilized in determining the appropriateness of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the

defendant.

See also State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

In the instant case, the trial court imposed a sentence of split confinement, which is an alternative sentence. See Tenn. Code Ann. § 40-35-306(a); State v. Williams, 52 S.W.3d 109, 120 (Tenn. Crim. App. 2001). However, "[t]he determination of whether the appellant is entitled to an alternative sentence and whether the appellant is entitled to full probation are different inquiries." State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Therefore, an appellant seeking full probation bears the burden of establishing his suitability for full probation. Id.; see also Tenn. Code Ann. § 40-35-303(b). To prove his suitability, the appellant must establish that granting full probation will "subserve the ends of justice and the best interest of both the public and the [appellant]." State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (internal quotation marks and citation omitted), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 8 (Tenn. 2000). Moreover,

> [i]n determining one's suitability for full probation, the court
> may consider the circumstances of the offense, the defendant's
> potential or lack of potential for rehabilitation, whether full
> probation will unduly depreciate the seriousness of the offense,
> and whether a sentence other than full probation would provide
> an effective deterrent to others likely to commit similar crimes.

Boggs, 932 S.W.2d at 477.

In denying the appellant's request for full probation, the trial court noted that the appellant had no prior criminal record. However, the trial court stated that he had been charged with eleven counts of criminal conduct, that evidence of his guilt was "very compelling, and that his conduct in this case was "particularly heinous." The trial court noted that the appellant never acknowledged any criminal conduct and never apologized to the victims or their family but concluded that he had a high potential for rehabilitation if he followed the recommendations in his psychological and psychosexual evaluation. Regarding the need for deterrence, the trial court stated that it had considered "the prominence of sexual offenses against children in Hickman County" and that confinement was "particularly suited to provide an effective deterrent to others likely to commit similar offenses." The court also

stated that not requiring confinement in this case would depreciate the seriousness of the offenses and "send the message that committing crimes against 'the plain people' is fair game because either there will be no prosecution or if prosecution occurs, one is not likely to serve any portion of the sentence in confinement." In conclusion, the trial court found the need to avoid depreciating the seriousness of the offenses to be of "paramount importance" in denying the appellant's request for full probation.

The trial court considered the factors stated in <u>Boggs</u> and relied heavily upon the need to avoid depreciating the seriousness of the offenses. In denying full probation to avoid depreciating the seriousness of the offense, the criminal act should be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree. <u>Zeolia</u>, 928 S.W.2d at 462. In this case, the trial court was greatly disturbed by the facts of the case and concluded that the appellant's moving in with the victim's Mennonite family and committing crimes against the fourteen-year-old victim and her sister satisfied that factor. Applying the presumption of reasonableness, we conclude that the appellant has failed to show that the trial court abused its discretion by ordering him to serve part of his sentence in confinement.

### C. Day for Day Confinement

Finally, the appellant contends, and the State concedes, that the trial court erred by ordering that he serve his sentence of eleven months, twenty-nine days in confinement "day for day." We agree. Our Code provides that a defendant sentenced to the jail or workhouse for less than one year is entitled to earn good conduct credits, and a trial court cannot deny a defendant this right by imposing a "day-for-day" sentence. <u>See</u> Tenn. Code Ann. § 41-2-111(b). Therefore, we must remand the case in order for the correction of judgments to reflect that the appellant is entitled to earn good conduct credits during the eleven months and twenty-nine days he is to serve in the county jail. <u>See</u> <u>State v. Jared M. Barnes</u>, No. E2001-00325-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 936, at *26 (Knoxville, Dec. 10, 2001).

### III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the trial court's denials of judicial diversion and full probation. However, the case is remanded to the trial court for the correction of judgments to reflect that the appellant is entitled to earn good conduct credits during the eleven months and twenty-nine days he is to serve in the county jail.

_____

NORMA McGEE OGLE, JUDGE